1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

STEVEN LAMONT MONROE,

    Petitioner,

Case No. 2:08-CV-00073-JCM-(GWF)

vs.

**ORDER**

DWIGHT NEVEN, et al.,

    Respondents.

       Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#1), respondents' answer (#30), and petitioner's reply (#39). The court finds that petitioner is not entitled to relief, and the court denies the petition.

       After a jury trial in the Eighth Judicial District Court of the State of Nevada, petitioner was convicted of one count of conspiracy to commit robbery and two counts of robbery with the use of a deadly weapon. Ex. 20 (#10). Petitioner appealed, filing a fast track statement. Ex. 22 (#10). The Nevada Supreme Court affirmed. Ex. 24 (#10). Petitioner, with the assistance of counsel, then filed in state court a post-conviction habeas corpus petition and supplement. Ex. 26 (#10), Ex. 27 (#10). The district court denied the petition. Ex. 31 (#10). Petitioner appealed, filing a fast track statement. Ex. 33 (#10). The Nevada Supreme Court affirmed. Ex. 35 (#10).

       Petitioner then commenced this action. Prior to service upon respondents, the court dismissed grounds 2, 3, and 7 of the petition (#1) because they were without merit. Order (#5). Respondents moved to dismiss (#12) grounds 4 and 5 of the petition (#1) because petitioner had not exhausted his available state-court remedies for those grounds. The court granted the motion.

1    Order (#26).  Petitioner elected to dismiss the unexhausted grounds.  Motion (#27).  The court

2    granted petitioner's request.  Order (#28).  Briefing on the merits of the remaining grounds

3    proceeded.

4                    "A federal court may grant a state habeas petitioner relief for a claim that was

5    adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was

6    contrary to, or involved an unreasonable application of, clearly established Federal law, as

7    determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15

8    (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision

9    that was based on an unreasonable determination of the facts in light of the evidence presented in

10   the State court proceeding," 28 U.S.C. § 2254(d)(2).

11                    A state court's decision is "contrary to" our clearly established law if it "applies a
                      rule that contradicts the governing law set forth in our cases" or if it "confronts a set
12                    of facts that are materially indistinguishable from a decision of this Court and
                      nevertheless arrives at a result different from our precedent." A state court's decision
13                    is not "contrary to . . . clearly established Federal law" simply because the court did
                      not cite our opinions.  We have held that a state court need not even be aware of our
14                    precedents, "so long as neither the reasoning nor the result of the state-court decision
                      contradicts them."
15

16   Id. at 15-16.  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court

17   may not issue the writ simply because that court concludes in its independent judgment that the

18   relevant state-court decision applied clearly established federal law erroneously or incorrectly.

19   Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76

20   (2003) (internal quotations omitted).

21                    [T]he range of reasonable judgment can depend in part on the nature of the relevant
                      rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule
22                    may be plainly correct or incorrect.  Other rules are more general, and their meaning
                      must emerge in application over the course of time.  Applying a general standard to
23                    a specific case can demand a substantial element of judgment.  As a result,
                      evaluating whether a rule application was unreasonable requires considering the
24                    rule's specificity.   The more general the rule, the more leeway courts have in
                      reaching outcomes in case-by-case determinations.
25

26   Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

27                    When it comes to state-court factual findings, [the Antiterrorism and Effective Death
                      Penalty Act] has two separate provisions.  First, section 2254(d)(2) authorizes federal
28                    courts to grant habeas relief in cases where the state-court decision "was based on an

                                                  -2-

1   unreasonable determination of the facts in light of the evidence presented in the State
    court proceeding." Or, to put it conversely, a federal court may not second-guess a
2   state court's fact-finding process unless, after review of the state-court record, it
    determines that the state court was not merely wrong, but actually unreasonable.
3   Second, section 2254(e)(1) provides that "a determination of a factual issue made by
    a State court shall be presumed to be correct," and that this presumption of
4   correctness may be rebutted only by "clear and convincing evidence."

5   We interpret these provisions sensibly, faithful to their text and consistent with the
    maxim that we must construe statutory language so as to avoid contradiction or
6   redundancy. The first provision—the "unreasonable determination" clause—applies
    most readily to situations where petitioner challenges the state court's findings based
7   entirely on the state record. Such a challenge may be based on the claim that the
    finding is unsupported by sufficient evidence, that the process employed by the state
8   court is defective, or that no finding was made by the state court at all. What the
    "unreasonable determination" clause teaches us is that, in conducting this kind of
9   intrinsic review of a state court's processes, we must be particularly deferential to our
    state-court colleagues. For example, in concluding that a state-court finding is
10  unsupported by substantial evidence in the state-court record, it is not enough that we
    would reverse in similar circumstances if this were an appeal from a district court
11  decision. Rather, we must be convinced that an appellate panel, applying the normal
    standards of appellate review, could not reasonably conclude that the finding is
12  supported by the record. Similarly, before we can determine that the state-court
    factfinding process is defective in some material way, or perhaps non-existent, we
13  must more than merely doubt whether the process operated properly. Rather, we
    must be satisfied that any appellate court to whom the defect is pointed out would be
14  unreasonable in holding that the state court's fact-finding process was adequate.

15  Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004).

16          "Rule 7 of the Rules Governing § 2254 cases allows the district court to expand the

17  record without holding an evidentiary hearing." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241

18  (9th Cir. 2005). The requirements of § 2254(e)(2) apply to a Rule 7 expansion of the record, even

19  without an evidentiary hearing. Id. "An exception to this general rule exists if a Petitioner

20  exercised diligence in his efforts to develop the factual basis of his claims in state court

21  proceedings." Id.

22          The petitioner bears the burden of proving by a preponderance of the evidence that he

23  is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

24          In ground 1, petitioner claims that the evidence was insufficient to support the

25  verdicts. "The Constitution prohibits the criminal conviction of any person except upon proof of

26  guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re

27  Winship, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction

28  pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that

1   upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt

2   beyond a reasonable doubt." Jackson, 443 U.S. at 324. "[T]he standard must be applied with

3   explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at

4   324 n.16. "[I]t is the exclusive province of the jury, to decide what facts are proved by competent

5   evidence. It was also their province to judge of the credibility of the witnesses, and the weight of

6   their testimony, as tending, in a greater or less degree, to prove the facts relied on." Ewing's Lessee

7   v. Burnet, 36 U.S. (11 Pet.) 41, 50-51 (1837). Petitioner raised this claim on direct appeal. The

8   Nevada Supreme Court held:

> First, Monroe contends that the evidence presented at trial was insufficient to support the jury's finding that he was guilty beyond a reasonable doubt of conspiracy to commit robbery (count I) and robbery with the use of a deadly weapon (counts II & III). Monroe argues that the pretrial statements made by the two victims were not consistent with their trial testimony.
>
> Our review of the record on appeal reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. In particular, we note that both victims, Daniel Reuben and Gabor Orosz, testified at trial that while sitting in a car parked outside of a convenience store, they noticed three individuals sitting in a car parked two spaces away. The individuals turned out to be Monroe, Kanika Hawkins (Monroe's girlfriend), and an individual identified only as either "David" or "Brian." The victims were eventually approached by Monroe, who demanded money and threatened them, stating, "Don't make me pull my 9 out on you," indicating that he had a gun. Orosz, based on his knowledge of guns, testified that Monroe possessed a black, semi-automatic handgun. Reuben gave Monroe $130.00, and Orosz handed over approximately $50-$60.00. Both victims testified that David approached their vehicle and threatened them, and then punched Reuben twice in the face as Reuben sat on the driver's side of the vehicle with the window down.
>
> Monroe argues that the victims' trial testimony differed significantly from statements they made prior to trial. For example, in a written statement given to the investigating officers the night of the robbery, Reuben stated that it was David who first demanded money and threatened them with a gun. Also, in his statement, Reuben claimed that Monroe "petted" his head after David punched him, whereas at trial, he stated that Monroe pulled his hair.
>
> In a recorded statement produced approximately one month after the incident, Orosz stated that Monroe approached them and asked for change in order to make a telephone call, whereas in a statement made the night of the robbery, Orosz claimed that Monroe asked for a dollar for gas; at trial, Orosz testified that after offering Monroe some change, Monroe "told us to 'F' that and give him a twenty." Further, in his 9-1-1 call, Orosz told the operator that he saw a knife, yet he never mentioned the knife in his statement that night, in his recorded statement a month later, at the preliminary hearing, or at trial. On cross-examination at trial, Orosz admitted that he made the statement about the knife but that he was never really sure that he saw one, so he did not mention it again. Finally, in his statement that night, Orosz claimed that it was Monroe who stated, after Reuben had been punched, "Come on, I don't

-4-

1
2

> want to catch a case," whereas at trial he stated that David made the comment. Orosz explained the discrepancy, stating that at the time of his statement to police that night, he was still panicking from the incident.

3
4
5
6

> Based on the above, we conclude that the jury could reasonably infer from the evidence presented that Monroe committed the crimes of conspiracy to commit robbery and robbery with the use of a deadly weapon. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, sufficient evidence supports the verdict. Therefore, we conclude that the State presented sufficient evidence to sustain the conviction.

7   Ex. 24, pp. 1-3 (#10). The Nevada Supreme Court's decision accurately reflects the testimonies of

8   Reuben and Orosz. See Ex. 11 (#10). Hawkins and petitioner testified for the defense. They

9   testified that they were driving in Hawkins' car to visit Hawkins' god-sister. They stopped at the

10  convenience store to call the god-sister to obtain the code that opened the gate to her apartment

11  complex. While there, David, an acquaintance, approached them and asked for a ride to his home.

12  Petitioner testified that he asked Reuben and Orosz for some change to call a cousin, and that when

13  they declined, David scoffed and said that they had money. Petitioner testified that David hit

14  Reuben, that he then held David back, told him to get into Hawkins' car, and apologized to Reuben.

15  Hawkins returned to the car, and they drove away. See Ex. 12 (#10). This case rested almost

16  entirely upon eyewitness evidence. In a situation like this, it is up to the jury to decide whom they

17  should believe. The jury believed the prosecution's witnesses, and the Nevada Supreme Court

18  affirmed on that ground. That was a reasonable application of Jackson v. Virginia. 28 U.S.C.

19  § 2254(d)(1). Reasonable jurists might find this conclusion to be debatable, and the court will grant

20  a certificate of appealability on the issue.

21       Although the police never found David,[1] he occasionally appeared, making

22  statements to Hawkins, to petitioner's mother, and to his attorneys. In ground 2, petitioner claimed

23  that the trial court erred because it did not admit pursuant to Nev. Rev. Stat. § 51.345 David's

24  hearsay declaration to petitioner's attorney and investigator. The court dismissed (#5) ground 2

25  _____

26       [1]Police found petitioner through Hawkins' car. Orosz noted the license plate and gave that
27  information to police. About a month after the incident, police found Hawkins' car, found Hawkins
    when she emerged from an apartment to protest the car's impoundment, and found petitioner after
28  interrogating Hawkins.

1    before directing a response because petitioner alleged only a violation of state law.  Reasonable

2    jurists would not find this conclusion to be debatable or wrong, and the court will not grant a

3    certificate of appealability on the issue.

4              In ground 3, petitioner claimed that the trial court should have instructed the jury on

5    accessory to a crime, as a lesser-related offense to robbery or robbery with the use of a deadly

6    weapon.  The court dismissed (#5) ground 3 because petitioner has no federal constitutional right to

7    an instruction on a lesser-related offense.[2]  See Hopkins v. Reeves, 524 U.S. 88, 96-98 (1998).

8    Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not

9    grant a certificate of appealability on the issue.

10             The court found (#26) that grounds 4 and 5 were not exhausted because petitioner

11   presented them only as issues of state law in his direct appeal.  Reasonable jurists would not find

12   this conclusion to be debatable or wrong, and the court will not grant a certificate of appealability on

13   the issue.

14             Grounds 6 and 10 are actually the same claim.  Petitioner claims that his trial counsel

15   provided ineffective assistance because counsel failed to obtain the necessary information to secure

16   David's testimony at trial or to admit hearsay into evidence.  Before trial, David had appeared at

17   counsel's office and gave a statement to counsel and his investigator.  Petitioner argues that counsel

18

19

20             [2]Accessory to a crime is not a lesser-included offense of robbery.  In Nevada, to determine
21   whether an offense is a lesser-included offense to the crime charged, "the test is whether the offense
     charged cannot be committed without committing the lesser offense."  Lisby v. State, 414 P.2d 592,
22   594 (Nev. 1966).  An accessory to a felony is a person who, with exceptions not relevant here,
     "[a]fter the commission of a felony harbors, conceals or aids such offender with intent that the
23   offender may avoid or escape from arrest, trial, conviction or punishment, having knowledge that
     such offender has committed a felony or is liable to arrest, is an accessory to the felony."  Nev. Rev.
24   Stat. § 195.030(1).  On the other hand, "Robbery is the unlawful taking of personal property from
     the person of another, or in the person's presence, against his or her will, by means of force or
25   violence or fear of injury, immediate or future, to his or her person or property, or the person or
     property of a member of his or her family, or of anyone in his or her company at the time of the
26   robbery."  Nev. Rev. Stat. § 200.380(1).  It is possible to commit robbery without being an
     accessory to robbery, and thus accessory to a crime is not a lesser-included offense to robbery.

27

28

-6-

1   should have learned David's last name, should have recorded David's statement, and should have

2   provided proof that David was served with a subpoena.

3          "[T]he right to counsel is the right to the effective assistance of counsel." <u>McMann</u>

4   <u>v. Richardson</u>, 397 U.S. 759, 771 & n.14 (1970).  A petitioner claiming ineffective assistance of

5   counsel must demonstrate (1) that the defense attorney's representation "fell below an objective

6   standard of reasonableness," <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), and (2) that the

7   attorney's deficient performance prejudiced the defendant such that "there is a reasonable

8   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

9   been different," <u>id.</u> at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim

10  to approach the inquiry in the same order or even to address both components of the inquiry if the

11  defendant makes an insufficient showing on one." <u>Id.</u> at 697.

12         <u>Strickland</u> expressly declines to articulate specific guidelines for attorney

13  performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of

14  interest, the duty to advocate the defendant's cause, and the duty to communicate with the client

15  over the course of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's

16  duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney

17  performance. . . .  Any such set of rules would interfere with the constitutionally protected

18  independence of counsel and restrict the wide latitude counsel must have in making tactical

19  decisions." <u>Id.</u> at 688-89.

20         Review of an attorney's performance must be "highly deferential," and must adopt

21  counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of

22  hindsight." <u>Strickland</u>, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that

23  counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

24  defendant must overcome the presumption that, under the circumstances, the challenged action

25  'might be considered sound trial strategy.'" <u>Id.</u> (citation omitted).

26         The Sixth Amendment does not guarantee effective counsel <u>per se</u>, but rather a fair

27  proceeding with a reliable outcome.  <u>See Strickland</u>, 466 U.S. at 691-92.  <u>See also Jennings v.</u>

28  <u>Woodford</u>, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

1    below an objective standard of reasonableness alone is insufficient to warrant a finding of

2    ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

3    prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

4    but for the attorney's challenged conduct, the result of the proceeding in question would have been

5    different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence

6    in the outcome."  Id.

7             Petitioner presented this claim in his state habeas corpus proceedings.  On this issue,

8    the Nevada Supreme Court held:

9             First, Monroe contends that the district court erred by finding that trial counsel were
              not ineffective for failing to (1) investigate and present exculpatory evidence at trial,
10            and (2) "properly interview and call potential alibi witnesses."  Specifically, Monroe
              claims that counsels' failure to secure both a written statement and the trial testimony
11            of "David," who allegedly informed three of Monroe's attorneys, a defense
              investigator, his mother (Venus Hudson), and his girlfriend (Kanika Hawkins) that he
12            was the perpetrator of the crime, not Monroe, entitles him to a reversal of his
              conviction.  Additionally, Monroe contends that trial counsel were ineffective for (3)
13            failing to present witnesses who knew that David was allegedly willing to accept
              responsibility for the crime, and (4) allegedly telling David that he would be subject
14            to criminal charges if he appeared in court.  We disagree.

15            At trial, the victims, Daniel Reuben and Gabor Orosz, testified that they were
              approached by Monroe, who demanded money and threatened them, stating, "Don't
16            make my pull my 9 out on you," indicating that he had a gun.  Orosz testified that
              Monroe possessed a black, semi-automatic handgun.  Reuben gave Monroe $130.00,
17            and Orosz handed over approximately $50-$60.00.  Both victims testified that David
              approached their vehicle and threatened them, and then punched Reuben twice in the
18            face as Reuben sat on the driver's side of the vehicle with the window down.  The
              district court excluded the allegedly exculpatory statements made by David to a
19            defense investigator, stating, among other things, "that the Court has serious
              questions on the trustworthiness and reliability of the statement."  In fact, Monroe
20            concedes that his first retained attorney, Robert Langford, "did not particularly
              believe David."  The district court also rejected Monroe's request for a continuance.
21
              At the hearing in the district court on Monroe's habeas petition, the State noted that
22            based on the trial testimony of the victim's and Monroe's girlfriend, Kanika
              Hawkins, who was present at the scene of the crime, David was a co-conspirator and
23            would not have exonerated Monroe.  After hearing arguments from counsel, the
              district court stated that there were "trial strategy issues," and as a result, found that
24            counsel were not ineffective.  Based on all of the above, we conclude that Monroe
              has failed to demonstrate that had counsel secured a written statement and/or the trial
25            testimony of David that there was a reasonable probability that the outcome of the
              trial would have been different.  Therefore, we conclude that the district court did not
26            err by rejecting this claim.

27    Ex. 35, pp. 2-4 (#10).  If David showed up at trial to testify, his testimony would not necessarily

28    have exonerated petitioner.  Reuben's and Orosz's testimonies still would have identified petitioner

1   as the person who threatened them and who took their money.  They both immediately and

2   independently identified petitioner as the robber in a photographic lineup.  Ex. 11, pp. 23-25, 57-59

3   (#10).  Furthermore, the jury found petitioner guilty of conspiring to commit robbery.  Even if David

4   actually took the money, the jury still could have found petitioner guilty of conspiracy and of

5   robbery, because petitioner would have been an accomplice.

6            The court doubts that learning David's last name or providing proof of proper service

7   of a subpoena would have secured David's testimony.  If David appeared at petitioner's trial, he

8   would not have testified and then departed.  He would have been arrested and charged with the same

9   crimes with which petitioner was charged.  His statement at the time of the robbery that he did not

10   want to catch a case indicates that he knew what awaited him if he walked into the courtroom.

11   When David gave his statement to counsel before trial, according to counsel's investigator David

12   requested that the statement not be recorded because he was afraid of possible consequences.  Ex.

13   12, p. 28 (#10).  If David was afraid that a recording of the statement would lead to his arrest, then

14   he would not have given counsel any other information that would have identified him to the police.

15            With respect to trying to admit David's hearsay declaration, the record indicates that

16   even if counsel tried to do what petitioner argues counsel should have done, it would not have made

17   any difference.  "A statement tending to expose the declarant to criminal liability and offered to

18   exculpate the accused in a criminal case is not admissible unless corroborating circumstances clearly

19   indicate the trustworthiness of the statement."  Nev. Rev. Stat. § 51.345(1).  David's declaration

20   lacked any independent corroboration.  His declaration is similar to the testimonies of petitioner and

21   Hawkins, but petitioner was facing charges and had the incentive to minimize his own involvement.

22   Hawkins was not facing charges, but the prosecutor at trial noted that she could have been charged

23   with being an accessory based upon her statements to police, and she also had the incentive to

24   minimize her involvement.  See Ex. 12, p. 15 (#10).  On other hand, in the hearing on whether to

25   admit David's hearsay declaration, the prosecution noted that police obtained the voluntary

26   statement of an independent eyewitness.  Her description of events corroborated the testimonies of

27   Reuben and Orosz.  Ex. 12, pp. 7-8.  Although her statement could not be entered into evidence

28   because it was hearsay, and although neither prosecution nor defense could locate her after she gave

1  that statement, it was a circumstance that showed a lack of corroboration of David's declaration.

2  Knowing David's name, recording his statement, and properly serving him with a subpoena would

3  not have corroborated his declaration.  Under these circumstances, the Nevada Supreme Court

4  reasonably applied <u>Strickland</u>.  Reasonable jurists might find the court's conclusion to be debatable,

5  and the court will grant a certificate of appealability on the issue.

6          In Ground 7, Petitioner argued that the state district court should have conducted an

7  evidentiary hearing on his claims of ineffective assistance of counsel.  The court dismissed (#5)

8  ground 7 before it directed a response from respondents.  "[A] petition alleging errors in the state

9  post-conviction review process is not addressable through habeas corpus proceedings."  <u>Franzen v.</u>

10 <u>Brinkman</u>, 877 F.2d 26, 26 (9th Cir. 1989); <u>see also</u> <u>Gerlaugh v. Stewart</u>, 129 F.3d 1027, 1045 (9th

11 Cir. 1997).  Reasonable jurists would not find this conclusion to be debatable or wrong, and the

12 court will not grant a certificate of appealability on the issue.

13          Ground 8 is a claim of ineffective assistance of counsel.  When the prosecution

14 cross-examined Hawkins, she was asked about citations for petty larceny.  Trial counsel objected,

15 and the court allowed the questions.  Appellate counsel did not raise the issue on direct appeal, and

16 petitioner claims that this amounted to ineffective assistance.  On this issue, the Nevada Supreme

17 Court held:

18          Fourth, Monroe contends that the district court erred by finding that appellate
           counsel was not ineffective for failing to challenge the State's cross-examination of
19         defense witness, Kanika Hawkins.  Specifically, Monroe claims that the State
           violated NRS 50.095 when it questioned Hawkins about a citation she received for
20         petit larceny after Hawkins stated that she had "never been in trouble before."  After
           a bench conference, the district court overruled defense counsel's objection.  NRS
21         50.085(3), however, "permits impeaching a witness on cross examination with
           questions about specific acts as long as the impeachment pertains to truthfulness or
22         untruthfulness and no extrinsic evidence is used."  This court has stated that "larceny
           involve[s] dishonesty," and is conduct relevant to a witness' truthfulness.  At the
23         hearing on Monroe's petition, the district court found that the cross-examination was
           proper under NRS 50.085.  We agree and conclude that this omitted issue did not
24         have a reasonable probability of success on appeal, and that the district court did not
           err by rejecting this claim.
25

26 Ex. 35, pp. 6-7 (citing <u>Collman v. State</u>, 7 P.3d 426, 436 (Nev. 2000), and <u>Yates v. State</u>, 596 P.2d

27 239, 242 (Nev. 1979)).  Nev. Rev. Stat. § 50.085(3) provides:

28

-10-

1
2
3
4

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime, may not be proved by extrinsic evidence. They may, however, if relevant to truthfulness, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to an opinion of his or her character for truthfulness or untruthfulness, subject to the general limitations upon relevant evidence and the limitations upon interrogation and subject to the provisions of NRS 50.090.

5   Section 50.090 is Nevada's rape-shield law and is not relevant to this action.

6          The Nevada Supreme Court is the ultimate authority on state law.  If a witness

7   testifies, as Hawkins did, that she had never been in trouble, and if the prosecution had information

8   that she had been in trouble, and if that evidence was relevant to dishonesty, then the prosecution

9   could cross-examine her about those specific instances of conduct.  Given that under Nevada law

10  larceny involves dishonesty, asking Hawkins questions about a larceny citation falls within

11  § 50.085(3).  Once that is established, then appellate counsel would not have succeeded with the

12  issue if appellate counsel had raised it on direct appeal.  Petitioner did not suffer prejudice, and

13  appellate counsel did not provide ineffective assistance.  The Nevada Supreme Court reasonably

14  applied Strickland.  Reasonable jurists would not find this conclusion to be debatable or wrong, and

15  the court will not grant a certificate of appealability on this issue.

16         In ground 9, petitioner complains that he received ineffective assistance of trial

17  counsel and appellate counsel because they did not properly raise the issue of whether the jury

18  actually found that petitioner had used a deadly weapon.  The jury had asked whether simulating a

19  weapon constitutes the use of a deadly weapon pursuant to instructions 28 or 33.  The judge referred

20  the jury to instructions 30 and 5.  Petitioner complains that counsel failed to obtain an affidavit from

21  any juror on the issue

22         Petitioner did raise on direct appeal the issue whether he was entitled to a new trial

23  based upon a jury misunderstanding of the instructions as to the use of a deadly weapon.  Ex. 22, pp.

24  10, 15-16 (#10).  The Nevada Supreme Court held:

25
26
27

> Fourth, Monroe contends that the jury misunderstood the deadly weapon instruction. During deliberations, the jury sent the following note and question to the court: "Does the act of simulating a weapon constitute use of a deadly weapon as per Instruction 28 or 33?"  Outside the presence of the jury, the district court informed counsel:

28

The Court has fashioned a response to advise them as follows:  Review your instructions, including the ones you noted and Nos. 30 and 5.  I believe that this is appropriate in response to their query.  The Court notes additionally they do have a separate instruction that tells them what a robbery is, and they have the instruction on the burden of proof.  So when you take the instructions together and assess them in the light of the others, they already the answer to their question, but I think it would be inappropriate to tailor an instruction to try to suppose what it is they're thinking and address that which may be in error.

Trial counsel filed an affidavit wherein he stated that "at least one juror informed me [after the trial] that the jury understood the instructions to provide that the State did not need to prove beyond a reasonable doubt that an actual firearm was used . . . in order to find the Defendant guilty."  Further, "at least one juror" informed counsel that had there not been any confusion with regard to the instruction, "she would not have voted for conviction."  Notably, Monroe does not argue that the jury instruction was improper or that any misconduct occurred, and he has not provided this court with an affidavit from a member of the jury.

NRS 50.065(2) expressly precludes any inquiry into internal jury deliberations.  It prohibits a juror from testifying "concerning the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or to dissent from the verdict or indictment or concerning his mental processes in connection therewith."  Furthermore, "[t]he affidavit or evidence of any statement by a juror indicating an effect of this kind is inadmissible for any purpose"  The statute allows "juror testimony regarding objective facts, or overt conduct, which constitutes juror misconduct," but it forbids evidence, like the affidavit in question, regarding the jurors' mental processes during their deliberations.  Accordingly, we conclude that Monroe's contention is without merit.

Ex. 24, pp. 7-8 (#10) (citations omitted).  The last paragraph shows that even if counsel did obtain an affidavit from a juror, it would have been inadmissible.  By the time of Petitioner's trial, without an extraneous influence, the clearly established rule of the Supreme Court of the United States "flatly prohibited the admission of juror testimony to impeach a jury verdict."  Tanner v. U.S., 483 U.S. 107, 117 (1987).  The Nevada Supreme Court's application of § 50.065 to petitioner's case was not unreasonable in light of Tanner.

In the habeas corpus appeal decision, the Nevada Supreme Court held:

Fifth, Monroe contends that the district court erred by finding that appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence with regard to the use of a deadly weapon.  In support of his argument, Monroe points out "the significant inconsistency in the alleged victim's [sic] testimony."  In his direct appeal, however, Monroe did, in fact, specifically challenge the sufficiency of the evidence used to convict him, while arguing that pretrial statements made by the victims were not consistent with their trial testimony.  This court rejected Monroe's argument and found that there was sufficient evidence to establish guilt beyond a reasonable doubt.  Therefore, we conclude that Monroe's claim is belied by the record and the district court did not err by rejecting it.

1  Ex. 35, p. 7 (#10).  The Nevada Supreme Court did not directly address petitioner's claim that trial

2  counsel and appellate counsel were ineffective regarding the possible confusion over whether a

3  deadly weapon was used.  However, the record shows that trial counsel and appellate counsel did

4  address the issue of possible juror confusion.  The Nevada Supreme Court's decision on direct

5  appeal shows that both trial counsel and appellate counsel did all that they could do.  The

6  investigation that petitioner argues counsel should have conducted, and the affidavits that petitioner

7  argues counsel should have obtained, would not have been admissible as evidence.  Consequently,

8  neither trial counsel nor appellate counsel provided ineffective assistance on this issue, and the

9  Nevada Supreme court reasonably applied Strickland.  Reasonable jurists might find this conclusion

10  to be debatable, and the court will grant a certificate of appealability on the issue.

11              The court disposed of ground 10 along with ground 6.

12              In ground 11, petitioner claims that counsel failed to cross-examine thoroughly

13  Daniel Reuben on the inconsistencies among his statement to police officers, his testimony at the

14  preliminary hearing, and his testimony at trial.  On this issue, the Nevada Supreme Court held:

15              Second, Monroe contends that the district court erred by finding that counsel was not
              ineffective for failing to "thoroughly" cross-examine one of the victims, Daniel
16              Reuben, and impeach him with pretrial statements not consistent with his trial
              testimony, namely his statements regarding who approached him in his vehicle,
17              Monroe or David, demanded money, and stated that he had a gun.  We disagree.
              Defense counsel, Dowon Kang, conducted the cross-examination and specifically
18              confronted Reuben and questioned him about his inconsistent statements.
              Accordingly, Monroe's contention is belied by the record.  Additionally, despite the
19              inconsistencies in Reuben's statements, the other victim, Gabor Orosz, testified
              consistently with Reuben's trial testimony, that it was Monroe who possessed a
20              black, semi-automatic handgun during the commission of the crime.  Therefore, we
              further conclude that the district court did not err in rejecting this claim.

21

22  Ex. 35, pp. 4-5 (#10) (footnote omitted).  Counsel confronted Reuben about his statement to police

23  that a white man demanded that Reuben and Orosz give them money and threatened to pull out a

24  pistol and the inconsistency in that statement with his trial testimony that a black man said those

25  things.  Ex. 11, p. 26 (#10).  Counsel confronted Reuben about his statement to police that the black

26  man petted his hair and the inconsistency with his trial testimony that the black man pulled his hair.

27  Ex. 11, pp. 27-28 (#10).  Trial counsel confronted Reuben about his recorded statement, in which he

28  did not say to whom he gave the money, and his testimony, in which he said that he gave the money

1    to petitioner.  Ex. 11, pp. 33-36 (#10).  Petitioner has not alleged what else counsel could have done.

2    Consequently, the Nevada Supreme Court's decision was a reasonable application of <u>Strickland</u>.

3    Reasonable jurists might find this conclusion to be debatable, and the court will grant a certificate of

4    appealability on the issue.

5            In ground 12, petitioner claims that he received ineffective assistance of trial counsel

6    because counsel did not inquire into obtaining a recording of the incident from a traffic surveillance

7    camera.  The Nevada Supreme Court held on this issue:

8            Third, Monroe contends that the district court erred by finding that trial counsel was
        not ineffective for failing to investigate and pursue "potential leads to support the
9        defense."  Specifically, Monroe claims that Kanika Hawkins informed trial counsel
        about a traffic surveillance camera located near the crime scene, and had counsel
10       secured the videotape footage, it would have shown that Monroe did not possess a
        gun and "was not a true and willing participant of this incident."

11
        We disagree with Monroe's contention and conclude that it is speculative, at best.
12       Monroe has not satisfied his burden and demonstrated that a videotape ever existed,
        or that the traffic camera was in working order and in position to capture the incident.
13       Moreover, even if the incident was captured by the surveillance camera, Monroe fails
        to demonstrate that it would have been favorable to the defense.  Presumably, the
14       videotape would have shown what Monroe admitted—that he approached the
        victims' vehicle and asked for money.  The existence of a videotape, lacking audio
15       capabilities, would not have supported Monroe's contention that he did not verbally
        threaten the victims with a gun, as they testified.  Therefore, we conclude that the
16       district court did not err by rejecting this claim.

17   Ex. 35, p. 5 (#10).  The Nevada Supreme Court's reasonably determined that petitioner's claim was

18   speculative.  Petitioner has the burden of proof in post-conviction proceedings.  He cannot simply

19   claim that trial counsel should have inquired about any possible videotape from the traffic camera.

20   He needs to show that the videotape exists or could have existed.  Petitioner was represented by

21   counsel in his state habeas corpus proceedings.  Post-conviction counsel could have inquired with

22   the relevant agency whether the camera was functioning, was connected to a recording device, and

23   was pointing in the correct direction.  If petitioner's post-conviction counsel could have found that

24   the answers to all three questions were in the affirmative, then petitioner might have made a

25   showing that his trial counsel performed deficiently.  Without that information, petitioner left the

26   state courts to guess whether his trial counsel performed deficiently, and by its very nature an

27   invitation to guess is a failure to prove his claim.  Reasonable jurists might find this conclusion to

28   be debatable, and the court will grant a certificate of appealability on the issue.

1    In ground 13, petitioner claims that he received ineffective assistance of appellate

2    counsel because appellate counsel did not "federalize" his grounds for relief.  As a result, the court

3    determined that grounds 4 and 5 of his petition (#1) were unexhausted.

4    Petitioner mooted this ground.  When the court determined that grounds 4 and 5 were

5    unexhausted, the court gave petitioner three options.  First, petitioner could seek a stay of this action

6    while he returned to state court to present the issues in grounds 4 and 5 as issues of federal law.

7    Second, petitioner could voluntarily dismiss this action without prejudice while he returned to state

8    court to present the issues in grounds 4 and 5 as issues of federal law.  Third, petitioner could have

9    voluntarily dismissed grounds 4 and 5, and the action would have proceeded with the remaining

10   grounds for relief; Petitioner chose this last option.  By dismissing grounds 4 and 5, petitioner

11   mooted any relief that the court could give petitioner because of appellate counsel's failure to raise

12   those grounds as issues of federal law on direct appeal.  Ground 13 is without merit.  Reasonable

13   jurists would not find this conclusion to be debatable or wrong, and the court will not grant a

14   certificate of appealability on the issue.

15   IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant

16   to 28 U.S.C. § 2254 (#1) is **DENIED**.  The clerk of the court shall enter judgment accordingly.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1        IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the

2  following issues:

3        1.      Whether sufficient evidence existed to support the verdicts of guilt;
        2.      Whether trial counsel provided ineffective assistance because counsel did not
4  obtain the necessary information either to secure David's testimony at trial or to
   introduce David's hearsay declaration into evidence;
5        3.      Whether trial counsel and appellate counsel provided ineffective assistance
   because they did not properly investigate and litigate the issue of whether the jury
6  found that petitioner had used a deadly weapon;
        4.      Whether trial counsel provided ineffective assistance by not cross-examining
7  Daniel Reuben more thoroughly about inconsistencies between his prior statements
   and his trial testimony; and
8        5.      Whether trial counsel provided ineffective assistance by not investigating
   whether a traffic surveillance camera could have provided a recording of the incident.
9
   DATED:   March 4, 2011.
10

11

12                                                  _____
                                                    JAMES C. MAHAN
13                                                  United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-